Eric H. Blinderman (EB-1076)
**LAW OFFICES OF ERIC H. BLINDERMAN**
622 Third Avenue, Suite 600
New York, New York  10017
(646) 325-9624 (tel)
(207) 433-4790 (fax)
eric@blindermanlaw.com

Jason Vanacour (*)
Texas State Bar No. 24073250
**VANACOUR PERKINS PLLC**
5851 Legacy Circle, Suite 600
Plano, TX 75024
Office: (972) 646-3999
Fax: (972) 476-1109
Email: jvancour@vanacourperkins.com
(*) Pro hac vice to be filed

*Attorneys for Plaintiff*
*Michael Ainsworth, on behalf of himself, and other investors similarly situated*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL AINSWORTH, on behalf of himself, and other investors similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>EEA LIFE SETTLEMENTS, INC.,<br><br>Defendant. | Case No.:<br><br>ECF Case<br><br>**COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiff Michael Ainsworth, on behalf of himself, and other investors similarly situated, by its attorneys (alternately "Plaintiffs" or the "Investors"), the Law Offices of Eric Blinderman and Vanacour Perkins, as and for its Complaint against Defendant EEA Life Settlements, Inc. (alternately "EEA" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. The Investors bring this action as a third-party beneficiary to enforce a contract (the "Contract") against Defendant. As discussed in the first-non redacted complaint (the "Coventry Action Complaint") in the related action captioned *Coventry Capital US LLC v. EEA Life Settlements Inc.*, No. 17-CV- 7417 (VM SLC) (S.D.N.Y.) (the "Coventry Capital Action"), Coventry Capital US LLC ("Coventry") and EEA entered in the Contract, pursuant to which Coventry and EEA were to negotiate a "Definitive Agreement" to sell the last remaining portfolio (the "Last Portfolio") of EEA Life Settlements Fund PCC Ltd. (the "Fund") to Coventry as a means to satisfy the Investors. When the Contract was executed Hiren Patel ("Patel"), and Vincent Piscaer, ("Piscaer") (Patel and Piscaer may be referred to collectively as the "Controlling Individuals") completely controlled and operated EEA and EEA 100% owned the Fund.

2. Unbeknownst to the Investors and apparently to Coventry, the Controlling Individuals never intended to honor their obligations under the Contract to negotiate a Definitive Agreement with Coventry and sell it the Last Portfolio. Rather, they always planned to breach the Contract, thereby ensuring that EEA's affiliates could continue collecting significant management fees, which all flowed to the Controlling Individuals, and which would cease if the Last Portfolio was sold.

3. The Investors bring this related action to compel Defendant sell the Fund's Last Portfolio to Coventry as required under the Contract and to distribute the proceeds arising therefrom to the Investors. The damages to the Investors because of Defendant's failure to honor the Contract and thereafter distribute sale proceeds arising from any sale of the Fund's Last Portfolio to the Investors exceeds $75,000.

## THE PARTIES

4. Plaintiff MICHAEL AINSWORTH, is a natural person residing in Portimao, Portugal, and brings this action on behalf of himself, and is authorized to bring this action on behalf the Investors who are similarly situated, all of whom reside outside the United States.[1]

5. Upon information and belief, Defendant EEA LIFE SETLEMENTS, INC. is a Delaware corporation with an office located at 1007 North Orange Street, Wilmington, DE 19801.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over EEA because EEA consented to the jurisdiction of this Court pursuant to paragraph II.6 of the Contract which states that "each of the Parties consents to the jurisdiction of" the United States District Court for the Southern District of New York over "[a]ny action or proceeding seeking to enforce any provision of, or based on any right arising out of, this [Contract]").

8. Venue is proper in this district because paragraph II.6 of the Contract requires that any action seeking to enforce its terms be brought "in the courts of the State of New York,

---

[1] Derek Antrobus, John Atkins, Jean Atkins, Fleur Robinson, Frank Baigel, Andrew Batten, Anthony Bernard Blasdale, Keith Bliss, Bowers Pension Trust, David Cohen, Nina Cohen, Jeremy Cuddigan, Ronald Sharp Elder, Jonathan Engler, Lydia Engler, Fairway Pension Trustees Limited re FJPPS re Peter Drew, Michael & Doris Fox, Simon Glossop, Ann Grainger, Basil Herwald, Patrick & Claire Hughes, IPM SIPP Trustees re Colin M Hoffman, Jacob Wolf Pension Trust, Elizabeth Jones, Graham Jones, Harold Kahan, Judith Kahan, Caroline Kent, Steve Kent, William Lewis, Ian McBeath, Catriona Murphy, Nicholas Nicholson, Enid Northcote, Christopher James Botha Nourse, Pamela Palmer, Melanie Rotherham, Neil Rotherham, Jeremy Rubin, Scorah Pension Scheme, Josephine Scorah, Dawn Shingles, Spring Green Ltd., Leslie Swerling, Gail Swerling, Pamela Mary Tippett, Sonia & Josef Wolf, Robert Adams, Isaac Philip Jaffe by AJ Bell, and Lesley Izard.

3

County of New York, or, if it has or can acquire jurisdiction, in the United States District Court for the Southern District of New York, and each of the Parties . . . waives any objection to venue laid therein."

## FACTUAL BACKGROUND

### I. The Fund

9. The Fund was established to purchase life insurance policies on the secondary market and, until November 30, 2011, offered investors the ability to invest in the Fund. The Fund promised investors an annual return of 8% but never achieved this goal. Indeed, in November 2011, the Fund was facing significant scrutiny of its business practices by relevant regulatory authorities, and individuals who had invested in the Fund were increasingly redeeming their capital. To cope with these pressures, the Fund (amongst other actions) instituted a broad based lock up on Investor redemptions.

10. To circumvent the lockup and thereby continue to collect unwarranted fees, the Controlling Individuals orchestrated a restructuring of the Fund that created two classes of Investors: (i) run off investors and (ii) continuing investors. The runoff investors were to be allowed to redeem their interests while continuing investors (as the name implied) were to have their interests remain with the fund. Regardless of this distinction, neither run-off investors nor continuing investors were ever permitted to redeem their interests.

11. Contemporaneously with the above, the Fund (which was attempting to value its remaining assets, *i.e.* the life insurance policies it held, based largely on actuarial estimates about the life expectancies of the insureds under those policies) was forced to restate and drastically lower the Fund's value after its valuation process was found to be deeply flawed.

12. The Fund's financial distress continues today with the Fund still restricting Investor redemptions and with many Investors demanding the Fund's liquidation, including the Investors herein.

## II. Defendant Misleadingly Seeks to Placate the Investors by Entering the Contract

13. To try and placate the Investors' redemption demands and to stave off legal action, the Controlling Individuals purported to seek a buyer for the Last Portfolio, which (as previously noted) the Defendant owns. Unbeknownst to the Investors, however, the Controlling Individuals never had any intention to sell the Last Portfolio, despite their promises to the contrary, as EEA was generated significant monthly management fees by managing the Last Portfolio, nearly all of which flowed directly to the Controlling Individuals. Thus, the Controlling Individuals (despite their obligations under the Contract with Coventry to negotiate a sale of the Last Portfolio) never did so as selling the Last Portfolio to Coventry would have caused these management fees flowing to EEA (and ultimately to the Controlling Individuals) to cease.

14. As spelled out in paragraph 26 of the Coventry Action Complaint:

> The discussions between EEA and Coventry Capital initially focused on a sale of the entire Portfolio. After weeks of negotiations over the purchase price for that Portfolio, however, EEA changed its position in or about the first week of April 2017 and insisted that the deal be structured to include a subset of policies that would be retained by EEA (the "retention portfolio"). Vincent Piscaer explained during a telephone conversation with Coventry Capital's Reid Buerger in or about the first week of April 2017 that the retention portfolio was needed because the Fund's continuing investors (as opposed to the run-off investors) required the retention of a subset of the Fund's portfolio for this ongoing investment. Despite this change in structure, Coventry Capital agreed to EEA's demands.

15. Despite Defendant's lack of intention to ever sell the Last Portfolio to Coventry, paragraph 1.1 and 1.2 of the Coventry Action Complaint explains that Coventry and EEA entered into the Contract on April 27, 2017. As explained more fully in paragraphs 1.1 and 1.2

5

of the Coventry Action Complaint, the Contract set forth "the principal terms" of a purchase by Coventry of the Last Portfolio, including a purchase price of $204 million payable by Coventry to EEA so long as Coventry satisfactorily completed due diligence and so long as EEA made reductions in the price to account for the retention portfolio as well as any policies that ultimately were not sold because they were tainted by fraud or for other reasons. Importantly, the Contract in paragraph 28 describes in detail the terms of a final sale of the Last Portfolio, including but not limited to, the requirement that Coventry and EEA engage in good-faith negotiations over certain terms that a Definitive Agreement for the Last Portfolio's sale would ultimately include.

16. Coventry anticipated that a Definitive Agreement would be negotiated by late July 2017 and this date was important to Coventry because it had already procured buyers for many policies that were included in the Last Portfolio. Accordingly, paragraph 1.2 of the Contract set an Effective Date of May 15, 2017, which meant that even if the Definitive Agreement was not closed by then, revenues from policies that matured thereafter would still flow to Coventry. Paragraph 1.2 of Contract also imposed the responsibility on EEA to continue paying premiums on the life insurance policies to be sold to Coventry as part of the Last Portfolio until at least thirty days after the Effective Date, after which Coventry would reimburse EEA for premiums paid on those policies. Finally, EEA agreed in paragraph II.2.2 of the Contract that it would not sell the last Portfolio to anyone other than Coventry or engage in any negotiations with anyone else regarding such a sale for 90 days after the Contract's execution date of April 27, 2017 (the "Exclusivity Period").

17. Defendant, through the Controlling Individuals, continually negotiated in bad faith and failed to honor its obligations under the Contract, despite the iron-clad framework of the Contract. In particular, Defendant, through the Controlling Individuals, made material misrepresentations to Coventry as set forth more fully in paragraphs 31-36 or the Coventry

Action Complaint, took contradictory positions to slow the final execution of the Contract as set forth more fully in paragraphs 37-39 of the Coventry Action Complaint, and as elucidated in paragraphs 40-49 of the Coventry Action Complaint, took positions in direct contravention of the Contract's terms.

18.     Defendant, through the Controlling Individuals, took all these actions without providing the Investors with any information at all.  To make matters worse, the Investors had no ability to find out information regarding the Controlling Individuals' plans regarding the Contract (let alone their unstated intention to negotiate in bad faith so that they could scuttle the Contract and keep management fees for themselves) or, more generally to liquidate the Last Portfolio.  All that the Investors know is that when the Coventry Action was commenced in 2017, and as explained in paragraph 2 of the Coventry Action Complaint, the Last Portfolio consisted of approximately 133 life insurance policies with net death benefits of approximately $459 million.[2]

19.     Now, according to the most recent financials which were sent to the Investors in June of 2022, as of December 31, 2021 only 46 policies remain in force with total net death benefits to be collected (assuming premiums are paid and policies do not lapse) of $169.4 million.

20.     What is even more troublesome is the fact that the Controlling Individuals continue to falsify the value of the Last Portfolio, refuse to consummate an orderly sale of the Last Portfolio to Coventry, or for that matter, to any other independent third party by way of

---

[2]     Although the Investors know this now, they were not informed of the Coventry Action or given any information about it until well after the Coventry Action was filed, despite the Controlling Individuals' fiduciary duty to notify the Investors of any material issues impacting the Fund, which would have clearly included the Coventry Action's filing.

auction or private sale, while continuing to line their pockets at the Investors' expenses by collecting management fees.

21. By way of example, according to the EEA Life Settlements Fund PCC Limited Annual Report and Audited Consolidated Financial Statements for the year ended 31 December 2021, the Fund had expenses of $4,459,000 in 2021 alone, more than half of which was comprised of payments to insiders such as the Controlling Individuals.

22. The Fund also reported losses on investments of $15,800,000 in 2021 alone and the long tail nature of the Last Portfolio suggests that significant additional losses will emerge in the future.

23. Further, and indicative of the Controlling Individuals' desire to maintain control over the Last Portfolio, and thereby keep management fees for themselves is an astounding disclosure that they made on October 31, 2022 to the Investors. Specifically, the Controlling Individuals announced on that day (and after all the wrongdoing and malfeasance noted herein and in the Coventry Action Complaint) that they intended to raise capital in a new fund (which would also own the Last Portfolio) and thereby increase the management fees that the Controlling Individuals were generating—all without creating any value for the Investors.

24. Simply put, the only asset left in the Fund is the Last Portfolio owned by Defendant and the Controlling Individuals have let Defendant breach the Contract so that they can keep collecting unwarranted management fees.

**III.   The Investors are Third Party Beneficiaries of the Contract**

25. Under New York law, a third party may enforce a contract when "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and … the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 248 (2d Cir. 2002). That

is, if it the parties to a contract intended that contract to benefit a third-party, and the primary contracting party had an obligation to execute the contract in good faith for the third-party, then the third-party will have standing to sue under the contract. *See Bayern Landesbank v. Aladdin Capital Mgmt, LLC*, 692 F.3d 42 (2d Cir. 2012).

26. Here, the Controlling Individuals expressly entered the Contract with Coventry for the specific benefit of the Investors. In fact, as the Last Portfolio at issue in the Contract was the sole remaining asset of the Fund, the only purpose for monetizing the Last Portfolio by selling it to Coventry pursuant to the Contract was to pay back the Investors, which the Fund was obligated to do.

27. On top of this, and more generally, Defendant had an obligation to act in good faith towards Investors, who were the true and direct beneficiaries of any sale of the Last Portfolio. Because of the above, the Investors have standing to sue EEA under the Contract as an intended third-party beneficiary.

## FIRST CAUSE OF ACTION
### (Breach of Contract- Damages)

28. Plaintiffs repeat and reallege each of their allegations contained in Paragraph 1 through and including Paragraph 27, as if fully set forth at length hereafter.

29. The Contract constitutes a valid and enforceable contract between Coventry and EEA.

30. Coventry complied with all conditions precedent, if any, and fully performed its obligations under the Contract, including its responsibility to negotiate with EEA in good faith in an attempt to reach a Definitive Agreement for the sale of the Last Portfolio within the framework contemplated by the Contract.

31. Defendant's conduct outlined above breached its obligation pursuant to paragraph II.2 of the Contract to negotiate in good faith a Definitive Agreement for the Last Portfolio's sale to Coventry.

32. As an actual and proximate result of Defendants' material breaches of the Contract, the Investors been damaged in an amount to be determined at trial, which exceeds $75,000, together with interest, expenses, costs, and attorneys' fees. Without limitation to the above, the Investors have suffered damage because they have not been permitted to obtain redemptions that are due and owing to them, which the Controlling Individuals represented could only be distributed if the Last Portfolio was sold. Moreover, pursuant to paragraph II.10 of the Contract, the Investors, as third-party beneficiaries, are entitled to recover all attorney's fees, costs, and expenses that relate to this litigation.

**SECOND CAUSE OF ACTION**
**(Breach of Contract - Specific Performance)**

33. Plaintiffs repeat and reallege each of their allegations contained in Paragraph 1 through and including Paragraph 32, as if fully set forth at length hereafter.

34. The Contract constitutes a valid and enforceable contract between Coventry and EEA.

35. Coventry complied with all conditions precedent, if any, and fully performed its obligations under the Contract, including its responsibility to negotiate with EEA in good faith in an attempt to reach a Definitive Agreement for the sale of the Last Portfolio within the framework contemplated by the Contract.

36. Defendant's conduct outlined above breached its obligation pursuant to paragraph II.2 of the Contract to negotiate in good faith a Definitive Agreement for the Last Portfolio's sale to Coventry.

37.     The Investors are a third-party beneficiary of the Contract and therefore have standing to compel Defendant's to negotiate a final and binding Definitive Agreement for the Last Portfolio's sale to Coventry.

\*\*\*   \*\*\*   \*\*\*

**WHEREFORE**, Plaintiff Michael Ainsworth, on behalf of himself, and other investors similarly situated respectfully requests the Court enter judgment on the Complaint:

(i)   On Plaintiffs' first cause of action for breach of contract, awarding money damages to Plaintiffs and against Defendant in an amount to be determined at trial, together with interest, expenses, costs, and attorneys' fees;

(ii)  On Plaintiffs' second cause of action for breach of contract, an order seeking specific performance of Defendant's obligation to negotiate a Definitive Agreement for the Last Portfolio's sale to Coventry that is consistent with the framework set forth in the Contract, together with interest, expenses, costs, and attorneys' fees; and

(iv)  Awarding such other relief as the Court deems just and proper.

Dated: New York, New York
November 2, 2023

**LAW OFFICES OF ERIC H. BLINDERMAN**

/s/Eric H. Blinderman
Eric H. Blinderman (EB-1076)

622 Third Avenue, Suite 600
New York, New York 10017
(646) 325-9624 (tel)
(207) 433-4790 (fax)
eric@blindermanlaw.com

**VANACOUR PERKINS PLLC**

Jason Vanacour (*)
Texas State Bar No. 24073250
5851 Legacy Circle, Suite 600
Plano, TX 75024
(972) 646-3999 (tel)
(972) 476-41109 (fax)
jvancour@vanacourperkins.com
*(*) Pro hac vice to be filed*

*Attorneys for Plaintiffs*
*Michael Ainsworth, on behalf of himself, and other investors similarly situated*